REYNALDO G. GARZA, Circuit Judge,
dissenting:
The majority reverses the district and bankruptcy courts and remands with instructions that the bankruptcy court redetermine Peele’s fees in accordance with § 328 rather than § 330. The majority found that the district court should apply the contingent fee at the rate originally agreed to, the blended rate described in the modifying order, and the hourly rate specified in the modifying Order. I must respectfully dissent, however, because the bankruptcy court in the present case did not approve a specific rate to be used in calculating fees based on the blended or hourly method of compensation. Rather, the bankruptcy court’s Modified Employment Order differentiated between types of compensation based upon the date that services were performed for the bankruptcy estate. Under the Modified Employment Order, pre-September 8 matters would be paid on a contingency fee basis, post-September 8 matters would be paid on an hourly fee basis, and matters pending as of September 8 would be paid on either a contingent or hourly fee basis.
The first method of compensation consisted of a 40% contingent basis for services completed prior to September 8, 1995. The parties would be able to calculate with certainty the amount that Peele would be compensated based on the contingent fee arrangement, and the bankruptcy court agreed to it. However, the bankruptcy court and Peele did not agree on the rate to be used after September 8, 1995, and no such rate was included in the Order. The Modified Employment Order does not provide a definitive hourly rate or even a range of hourly rates.[1] Under § 328, the bankruptcy court may approve a professional’s employment based on any “reasonable terms and conditions of employment.” 11 U.S.C. § 328. Because the Modified Employment Order did not establish a post-September 8 hourly rate of compensation, the bankruptcy could not *447 possibly have made a prior determination of the reasonableness of the “terms and conditions of employment” or given prior approval to the compensation requested by Peele. Thus, the bankruptcy court and Peele did not agree that § 328 would apply to the entire final fee application.
The Modified Employment Order states that the employment agreement was being modified “to (i) affirm the contingency fee arrangement with regard to completed work; (ii) pay for work-in-progress on a contingency/hourly fee basis, plus expenses; and (iii) pay for future work performed on behalf of the estate utilizing the lodestar approach, plus expenses.” (emphasis added). The lodestar approach refers to a formula involving the multiplication of the number of hours reasonably expended in a case by the hourly compensation rate prevailing in the community for similar work. The resulting figure is then subject to adjustment to reflect factors such as the difficulty and quality of the representation. In accordance with the lodestar approach, Peele’s final fee application included an analysis of the factors to be considered in adjusting the lodestar. If the bankruptcy court was without authority to reduce Peele’s fees, except for developments unforeseen when the fees were approved, there would be no need to mention the lodestar approach in the modified order or to address the factors in the fee application.
The Modified Employment Order states that it did “not modify in any respect, this Court’s authority to review this and all employment orders in accordance with Section 328 of the Bankruptcy Code.” Peele argues that this language establishes that the entire agreement is governed by § 328. However, the bankruptcy court’s reservation of its authority to review the terms and conditions of employment orders pursuant to § 328 does not necessarily imply that the entire Order is actually controlled by § 328. Reserving authority is not the same as exercising it. The Modified Employment Order did not set a specific post-September 8 compensation rate, rendering § 328 inapplicable to the review of post-September 8 compensation.
The only part of the agreement that § 328 governs is the 40% contingent fee agreement because the court expressly approved and established that amount in both the Original and Modified Employment Orders. This arrangement enabled the bankruptcy court to grant its prior approval because the court could evaluate the reasonableness of the specified amount in advance. In contrast, the bankruptcy court was not able to grant its prior approval to the post-September 8 compensation because no rate on which the blended fees and hourly fees would be based had been determined or disclosed, and thus an analysis of the reasonableness of such an arrangement could not be made in advance.
In accordance with congressional intent, the bankruptcy and district courts correctly decided to apply the reasonableness standard of § 330 to the present case. If a district court fails to clearly determine the hourly rate of compensation, then § 328 is inapplicable, and § 330 governs by default. As this Court explained in Donaldson Lufkin & Jenrette Securities Corporation v. National Gypsum Company, professionals may avoid § 330 and the “uncertainties of what a judge thought the work was worth after it had been done” by proceeding under § 328. Id. at 862-63. However, § 328 applies only where prior agreement on a rate of compensation has eliminated uncertainty and courts need not engage in judicial guesswork to determine the rate. As in the present case, where ambiguity exists as to whether court approval has been given to a specific, mutually agreed-upon hourly rate of compensation, Congress intended § 330 to govern. See National Gypsum, 123 F.3d 861 (5th Cir.1997) (holding that bankruptcy courts must set compensation awards for professional consultants either according to § 330, which governs compensation of officers based on reasonableness, or § 328, *448 which permits professionals to obtain prior court approval of certain compensation agreed to with the trustee, debtor, or committee) (citing 11 U.S.C. §§ 328, 330).
In conclusion, I part company with the majority because of a combination of factors. First, the majority relies on ambiguous language in the Modified Employment Order that fails to clearly disclose the hourly rate of compensation. See supra footnote 1. Second, the majority overlooks the discussions of the lodestar approach in the Modified Employment Order and the final fee application. Third, it is uncertain whether the parties agreed that § 328 would apply to the entire Modified Employment Order. Thus, I find that the bankruptcy and district courts were correct in deciding that § 330 must control the post-September 8, blended and hourly rate employment compensation arrangements, while § 328 governs the pre-September 8, 40% contingency fee employment compensation arrangement. Therefore, I respectfully dissent.

. The majority concludes that the hourly rate is specified in the Modified Employment Order as that "in effect at Hill & Held on September 8, 1995.” (emphasis added) However, the Modified Employment Order merely sets the hourly rate as that "in effect as of September 8, 1995.” It is unclear to which specific rate the Modified Employment Order refers. The majority assumes that the rate to which the Modified Employment Order refers is that in effect at Hill & Held, but it does not explain why. The Modified Employment Order gives no indication that the rate in effect at Hill & Held on September 8 had been mutually agreed upon or given prior court approval.